# Illinois Official Reports

## Supreme Court

---

### *People v. Price*, 2016 IL 118613

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAMEN PRICE, Appellee. |
| Docket No. | 118613 |
| Filed | December 30, 2016 |
| Rehearing denied | March 27, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Steven J. Goebel, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Veronica Calderon Malavia, Eric Leafblad, and Annette Collins, Assistant State's Attorneys, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Patricia Mysza, Deputy Defender, and Todd T. McHenry, Assistant Appellate Defender, of the Office of the State Appellate Defender, for appellee. |

Justices        JUSTICE THEIS delivered the judgment of the court, with opinion.
Chief Justice Karmeier and Justices Freeman, Thomas, Garman, and Burke concurred in the judgment and opinion.
Justice Kilbride specially concurred, with opinion.

**OPINION**

¶ 1        Defendant, Damen Price, filed a *pro se* petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), arguing that his natural life sentence for first degree murder was void. The trial court dismissed the petition. The appellate court reversed the dismissal and remanded for resentencing. 2014 IL App (1st) 130037-U, ¶ 31. In light of our decision in *People v. Castleberry*, 2015 IL 116916, in which we abolished the so-called "void sentence rule," we reverse the judgment of the appellate court and affirm the judgment of the trial court dismissing defendant's petition.

¶ 2                                      BACKGROUND

¶ 3        In November 1996, following a jury trial in the circuit court of Cook County, defendant was convicted of aggravated arson and the first degree murder of 4-year-old Curtis Jones, Jr., who died in the fire. Defendant had requested separate verdict forms for the various theories of murder charged by the State (intentional, knowing, and felony murder), but the trial court denied that request. The jury thus returned a general verdict of guilty of first degree murder and aggravated arson. The same jury found defendant death-penalty eligible but determined he should not be sentenced to death. The trial court sentenced defendant to a term of natural life imprisonment for murder and a consecutive term of 30 years' imprisonment for aggravated arson. The appellate court affirmed defendant's conviction and sentence. *People v. Price*, 303 Ill. App. 3d 1101 (1999) (table) (unpublished order under Supreme Court Rule 23).

¶ 4        In April 2000 and again in February 2003, defendant unsuccessfully pursued relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2002)). Thereafter, in September 2010, defendant sought relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)), again without success. Defendant did not challenge, on direct review or on collateral review, the trial court's denial of his request for separate verdict forms.

¶ 5        In February 2012, defendant filed his second *pro se* petition under section 2-1401, which is the subject of this appeal. Defendant recognized that section 2-1401 petitions must be filed "not later than 2 years after the entry of the order or judgment" (735 ILCS 5/2-1401(c) (West 2012)) but asserted that the statutory time bar did not apply because he was seeking relief from judgment on "voidness grounds." See 735 ILCS 5/2-1401(f) (West 2012). Defendant argued that under *People v. Smith*, 233 Ill. 2d 1 (2009), the trial court erred in denying his request for separate verdict forms and therefore "lacked the power and authority to render judgment." Defendant maintained that the appropriate remedy was to interpret the jury's general verdict as a verdict on felony murder and remand for resentencing. Although the trial court appointed counsel for defendant, the court allowed him to proceed *pro se*, upon defendant's request. The

- 2 -

trial court granted the State's motion to dismiss defendant's petition, agreeing with the State that the underlying judgment was not void and *Smith* did not apply retroactively on collateral review.

¶ 6 The appellate court reversed and remanded for resentencing on felony murder alone. 2014 IL App (1st) 130037-U, ¶ 31. The appellate court first rejected the State's argument that defendant's section 2-1401 petition was time-barred. The appellate court explained that defendant claimed "his sentence of natural life imprisonment was not authorized by statute and is therefore void" and "[w]hen a defendant challenges a void judgment, the two-year limitation does not apply." *Id.* ¶ 15. On the merits, the appellate court held that the rule regarding special verdict forms announced in *Smith* was reaffirmed in *People v. Bailey*, 2013 IL 113690, and the rule applied retroactively on collateral review. 2014 IL App (1st) 130037-U, ¶¶ 18-19, 25.

¶ 7 We allowed the State's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Jan. 1, 2015).

¶ 8 Shortly after the State filed its opening brief in this court, we announced our decision in *Castleberry*, abolishing the void sentence rule. At oral argument, questions arose as to the applicability of *Castleberry*. We subsequently ordered the parties to file supplemental briefs addressing two issues: whether *Castleberry* "should apply retroactively [to] matters on collateral review" and, if so, "what impact would that have on the instant case."

¶ 9 As discussed below, we hold that, in light of *Castleberry*, defendant's section 2-1401 petition was untimely and properly dismissed.

¶ 10                                                ANALYSIS

¶ 11                                                      I

¶ 12 As a preliminary matter, we consider defendant's forfeiture argument. Defendant contends that, even if *Castleberry* could apply retroactively to his case, the State forfeited any argument that his section 2-1401 petition was untimely. We disagree. The issue is not simply whether defendant's petition was untimely, an issue the State pursued in the courts below. The issue is whether defendant's petition was untimely based on retroactive application of our decision in *Castleberry*. The State could not have addressed that issue until *Castleberry* was decided, which did not occur until after the State filed its opening brief. The State did, however, recognize the potential significance of *Castleberry* when it noted in both its petition for leave to appeal as well as its brief that whether a statutorily nonconforming sentence is void or voidable was then pending before this court in *Castleberry*. The State suggested that we hold its petition for leave to appeal in abeyance pending our decision in *Castleberry*, but we elected to allow the State's petition. After we announced our decision in *Castleberry* abolishing the void sentence rule, this court had the discretion to order the parties to brief the impact of *Castleberry* on this case. Under these circumstances, we reject defendant's forfeiture argument.

¶ 13 We also note that while this case was pending before this court, our appellate court considered the retroactivity of *Castleberry* but did not come to a uniform conclusion. Compare *People v. Smith*, 2016 IL App (1st) 140887, ¶ 30 (holding that *Castleberry* did not announce a new rule under *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion) and, thus, cannot be applied retroactively on collateral review), *pet. for leave to appeal pending*, No. 121060 (filed Jul. 18, 2016), with *People v. Stafford*, 2016 IL App (4th) 140309, ¶ 33 (holding that because *Castleberry* did not establish a new rule under *Teague*, its holding *does* apply retroactively),

- 3 -

*pet. for leave to appeal pending*, No. 121393 (filed Oct. 4, 2016), and *People v. Cashaw*, 2016 IL App (4th) 140759, ¶¶ 35-40 (holding that *Teague* does not control and *Castleberry* applies retroactively to collateral proceedings), *pet. for leave to appeal pending*, No. 121485 (filed Oct. 26, 2016). To the extent it could be argued that the State failed to pursue the timeliness issue, we have the authority to "overlook any forfeiture in the interest of maintaining a sound and uniform body of precedent." *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 41. For this further reason, we reject defendant's forfeiture argument and consider the retroactivity issue that we directed the parties to brief.

¶ 14                                                                    II

¶ 15        In *People v. Arna*, 168 Ill. 2d 107, 113 (1995), we held that a "sentence which does not conform to a statutory requirement is void," and the appellate court has the "authority to correct it at any time." Thus, in *Arna*, we rejected the defendant's argument that the appellate court was without authority to correct his sentence, *sua sponte*, on direct review. *Id.* at 112-13. So began the history of the "void sentence rule."

¶ 16        *Arna* implicitly relied on the then-prevailing view that a court which lacks the "inherent power" to enter the particular judgment involved renders that judgment void. *Id.* at 113 (citing *People v. Wade*, 116 Ill. 2d 1 (1987)). Although we anticipated that, as a general rule, the State and the courts, rather than defendants, would be raising *Arna* errors (*People v. Garcia*, 179 Ill. 2d 55, 75 (1997)), defendants embraced *Arna*'s void sentence rule because it allowed them to attack a statutorily nonconforming sentence at any time, in any court, either directly or collaterally (see *People v. Thompson*, 209 Ill. 2d 19, 27 (2004)). Thus, as to defendants, the void sentence rule functioned as a judicially created exception to the forfeiture doctrine. *People v. Marshall*, 242 Ill. 2d 285, 302 (2011) ("challenge to an alleged void order is not subject to forfeiture"); *Thompson*, 209 Ill. 2d at 27 ("argument that an order or judgment is void is not subject to waiver").

¶ 17        *Castleberry* abolished the void sentence rule because it was constitutionally unsound. *Castleberry*, 2015 IL 116916, ¶¶ 1, 19. Specifically, *Castleberry* determined that the "inherent power" view of jurisdiction, on which the rule was based, could not be reconciled with the constitutional grant of jurisdiction and was at odds with opinions from this court rejecting that view of jurisdiction in the civil context. *Id.* ¶ 18. Thus, pursuant to *Castleberry*, a statutorily nonconforming sentence is not void; it is merely voidable and subject to the usual rules of forfeiture or other procedural restraints. *Id.* ¶¶ 11-18. In addition to our constitutional jurisprudence, *Castleberry* relied on the policy favoring finality of judgments. *Id.* ¶ 15 (citing *LVNV Funding, LLC v. Trice*, 2015 IL 116129). After *Castleberry*, a reviewing court may no longer, *sua sponte*, correct a statutorily nonconforming sentence (*id.* ¶¶ 20-24), the State may no longer seek to correct such a sentence on direct review but must seek a writ of *mandamus* to do so (*id.* ¶¶ 26-27), and a defendant may no longer rely on the void sentence rule to overcome forfeiture of a claimed sentencing error or to challenge a statutorily nonconforming sentence in perpetuity (*id.* ¶¶ 17-19). See also *People v. Thompson*, 2015 IL 118151, ¶ 33 (stating that after *Castleberry*, it is "no longer valid" to argue that a sentence that does not conform to a statutory requirement is void).

¶ 18        As directed by this court, both parties filed supplemental briefs addressing whether *Castleberry* applies to matters on collateral review. Although both parties rely on the

retroactivity analysis set forth in *Teague v. Lane*, 489 U.S. 288 (1989), adopted by this court in *People v. Flowers*, 138 Ill. 2d 218 (1990), they come to different conclusions. The State argues that the rule announced in *Castleberry* is akin to a substantive rule as defined in *Teague* and, thus, applies retroactively to matters on collateral review. Defendant argues that the rule announced in *Castleberry* does not qualify as a new substantive rule or a watershed rule of criminal procedure under *Teague* and, thus, does not apply retroactively to matters on collateral review. We disagree with the parties that *Teague* controls the retroactivity question.

¶ 19    The Supreme Court's decision in *Teague* is a refinement of its earlier retroactivity jurisprudence that arose largely in response to the expansion of the rights of criminal defendants in the 1960s. See *Mackey v. United States*, 401 U.S. 667, 676 (1971) (Harlan, J., concurring in the judgments in part and dissenting in part) (recognizing that the Court's retroactivity doctrine, which came into being in 1965, was the "product of the Court's disquietude with the impacts of its fast-moving pace of constitutional innovation in the criminal field"); Lyn S. Entzeroth, *Reflections on Fifteen Years of the* Teague v. Lane *Retroactivity Paradigm: A Study of the Persistence, the Pervasiveness, and the Perversity of the Court's Doctrine*, 35 N.M. L. Rev. 161, 166-67 (2005). Having expanded the constitutional rights of criminal defendants, the Court was faced with the question of which defendants should receive the benefit from those changes in the law. *Entzeroth*, *supra*, at 166-67.

¶ 20    The Court's retroactivity jurisprudence distinguished between (i) cases on direct review at the time a new rule is announced, *i.e.*, those cases in which the conviction is not yet final, and (ii) cases on collateral review at the time a new rule is announced, *i.e.*, those cases in which the conviction is final. *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004). *Teague* addressed the latter situation, clarifying and limiting the circumstances under which a defendant whose conviction was final could claim the benefit of a new rule. *Id.*; *Teague*, 489 U.S. at 300.

¶ 21    Underlying the application of the *Teague* analysis is the notion that the new rule, had it been in effect at the time of trial, could have made a difference in the outcome. In *Teague*, for example, the defendant, who was convicted by an all-white jury, sought to benefit from the Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986), which was decided after his conviction became final.

¶ 22    Here, the rule we adopted in *Castleberry* can make no difference in the outcome of a criminal trial. We simply eliminated the void sentence rule. Neither the void sentence rule nor its elimination impacts the accuracy of a defendant's conviction, the accuracy or constitutionality of a sentence, or the fundamental fairness of a defendant's trial. In short, *Castleberry* did not change any rule affecting the conduct of criminal prosecutions. *Castleberry* comes into play, if at all, only after judgment is rendered in the criminal trial. Thus, the *Teague* analysis is simply not triggered here.

¶ 23    This conclusion finds support in *Welch v. United States*, 578 U.S. ___, 136 S. Ct. 1257 (2016). There, the Supreme Court explained that the *Teague* retroactivity framework creates a balance between the need for finality in criminal cases and the countervailing need to ensure that criminal punishment is only imposed when authorized by law. *Id.* at ___, 136 S. Ct. at 1266. This balance depends "on whether the new rule itself has a procedural function or a substantive function—that is, whether it alters only the procedures used to obtain the conviction, or alters instead the range of conduct or class of persons that the law punishes." *Id.* at ___, 136 S. Ct. at 1266. *Castleberry* does neither.

¶ 24    Although defendant recognizes that *Castleberry*, like *Arna*, "does not create or affect the underlying error" (here, defendant's allegedly unlawful sentence), defendant nonetheless argues that *Teague* controls the retroactivity issue. Application of *Teague* to our decision in *Castleberry*, in the manner defendant urges, would turn *Teague* on its head. Defendant would use *Teague* to prevent the application of a new rule (*Castleberry*'s abolition of the void sentence rule) to his section 2-1401 petition and to benefit from application of an old rule (*Arna*'s void sentence rule). This is not how *Teague* functions. See *Cashaw*, 2016 IL App (4th) 140759, ¶ 39 ("defendant cannot rely on the framework of *Teague* to argue that a new rule should not apply, when the defendant is seeking to overturn an old judgment").

¶ 25    We emphasize that when we ask whether a new rule or decision of this court should apply to "matters on collateral review," the "matter" to which we are referring is defendant's underlying conviction or sentence. Thus, when we conclude, based on *Teague* and its progeny, that a new rule should apply retroactively to "matters on collateral review," what we mean is that we will treat the new rule as if it were in existence at the time of, and applied to, the trial proceeding being challenged by the defendant in his or her collateral pleading. In this respect, the issue we directed the parties to brief—whether *Castleberry* "should apply [to] matters on collateral review"—was misleading. The issue assumed that *Castleberry* "could" be applied to a defendant's conviction or sentence and the only question was whether, under *Teague*, it "should" be applied where the conviction and sentence were final and were challenged on collateral review. This assumption was incorrect because, as discussed above, *Castleberry* has no application to criminal trials to begin with, rendering the *Teague* analysis inapplicable.

¶ 26    The question yet remains whether the rule announced in *Castleberry* should apply to defendant's section 2-1401 petition, which was pending before this court when *Castleberry* was decided. The answer is "yes."

¶ 27    Unquestionably, *Castleberry* applies not only to the parties in that case but also prospectively. As we recognized in *Thompson*, 2015 IL 118151, ¶ 33, after our decision in *Castleberry*, it is "no longer valid" to argue that a sentence that does not conform to a statutory requirement is void. As to defendant's case, in which his section 2-1401 petition was pending in the appellate pipeline at the time *Castleberry* was announced, we turn to our general rule of retroactivity. Under this rule, our decisions apply to "all cases that are pending when the decision is announced, unless this court directs otherwise." *People v. Granados*, 172 Ill. 2d 358, 365 (1996); accord *People v. Linder*, 186 Ill. 2d 67, 75 (1999). This rule applies where, as here, the *Teague* retroactivity analysis does not apply. See *Granados*, 172 Ill. 2d at 365.

¶ 28    In *Castleberry*, we did not limit the reach of our decision, and defendant offers no equitable or other reason that militates against applying *Castleberry* to his pending section 2-1401 petition. Indeed, not applying *Castleberry* would thwart the very policy espoused in that decision—preserving the finality of judgments—by permitting defendants to continue to argue that a statutorily nonconforming sentence is void. See *Castleberry*, 2015 IL 116916, ¶ 15 (citing *LVNV Funding*, 2015 IL 116129).

¶ 29    Defendant argues, however, that *Castleberry* is irrelevant because it only dealt with one type of void judgment. According to defendant, a judgment is also void "where it was imposed in violation of a substantive new rule," as defined by *Teague* and its progeny. Defendant maintains that his sentence was imposed in violation of a substantive new rule—the rule

- 6 -

announced in *Smith* and *Bailey* regarding special verdict forms—and is void, allowing his late-filed section 2-1401 petition to proceed.

¶ 30        Void judgments occupy a "unique place" in our legal system. (Internal quotation marks omitted.) *Id.* When we say that a judgment is void, that judgment may be challenged "at any time, either directly or collaterally, and the challenge is not subject to forfeiture or other procedural restraints." (Internal quotation marks omitted.) *Id.* Therefore, only the most fundamental defects warrant declaring a judgment void. *Id.*

¶ 31        This court has recognized only three circumstances in which a judgment will be deemed void: (1) where the judgment was entered by a court that lacked personal or subject-matter jurisdiction, (2) where the judgment was based on a statute that is facially unconstitutional and void *ab initio*, and (3) where a judgment of sentence did not conform to a statutory requirement (the void sentence rule). *Thompson*, 2015 IL 118151, ¶¶ 31-33. *Castleberry* eliminated the third type of void judgment, thus narrowing the universe of judgments subject to attack in perpetuity.

¶ 32        Defendant would have us reverse course and expand our voidness doctrine by declaring as void all judgments of conviction and sentence that do not conform to a later announced substantive rule, although the judgment conformed to constitutional standards at the time of trial. We decline to do so. If a new rule qualifies as a "substantive rule" under *Teague*, then defendants whose convictions are final may seek the benefit of that rule through appropriate collateral proceedings. See *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 729 (2016) ("when a new substantive rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule"). Declaring the underlying judgments "void" is not warranted.

¶ 33        Finally, defendant argues that even if this court applies *Castleberry* to his *pro se* section 2-1401 petition, its only theoretical relevance concerns whether he chose the proper vehicle in which to challenge his sentence, *i.e.*, whether he correctly labeled the pleading a petition for relief from judgment or whether he should have labeled it a motion for leave to file a successive postconviction petition. Citing *People v. Shellstrom*, 216 Ill. 2d 45 (2005), defendant contends that not addressing the merits of his underlying claim would be unduly harsh where he used the wrong heading on his petition. Thus, defendant seeks to have this court recharacterize his section 2-1401 petition as a successive postconviction petition that satisfied the cause-and-prejudice test.

¶ 34        In *Shellstrom*, we reaffirmed, in conformity with our precedents, that the circuit court may treat a *pro se* petitioner's pleading, alleging a deprivation of a constitutional right, as a postconviction petition although the pleading was not labeled as such. *Shellstrom*, 216 Ill. 2d at 51-53. *Shellstrom* does not support defendant's argument for recharacterizing a *pro se* pleading for the first time on appeal before this court. We also agree with the State that defendant should not be permitted to avoid satisfying the cause-and-prejudice test for successive postconviction petitions by appealing to the "spirit" of *Shellstrom*.

¶ 35        For the reasons stated above, we hold that *Castleberry* applies to defendant's section 2-1401 petition that was pending at the time *Castleberry* was decided. Accordingly, defendant cannot rely on the void sentence rule, which *Castleberry* eliminated, to escape the two-year statutory time bar. See 735 ILCS 5/2-1401(c), (f) (West 2012). Defendant's petition was untimely. We therefore reverse the judgment of the appellate court and affirm the judgment of

the trial court dismissing defendant's petition.

¶ 36    Appellate court judgment reversed.

¶ 37    Circuit court judgment affirmed.

¶ 38    JUSTICE KILBRIDE, specially concurring:

¶ 39    Although I agree in principle with the majority's conclusion that our decision in *People v. Castleberry*, 2015 IL 116916, should apply retroactively to cases on collateral review, I do not believe that defendant's claims should be resolved under *Castleberry*. Instead, I would address the issue actually raised by the State and presented by the parties in their original briefs to this court. See *People v. Givens*, 237 Ill. 2d 311, 323-24 (2010) (observing the well-established principle that a reviewing court should honor the parties' presentation of the issues on appeal and should not raise new issues).

¶ 40    In 2012, defendant filed an untimely *pro se* section 2-1401 petition seeking relief from his natural life sentence under the rule on special verdict forms in murder cases announced in *People v. Smith*, 233 Ill. 2d 1 (2009). Subsequent to the filing of defendant's petition, *Smith* was reaffirmed in *People v. Bailey*, 2013 IL 113690, ¶ 57. In *Bailey*, this court expressly "reaffirm[ed] our holding in *Smith* that 'where, as here, specific findings by the jury with regard to the offenses charged could result in different sentencing consequences, favorable to the defendant, specific verdict forms must be provided upon request and the failure to provide them is an abuse of discretion.' " *Bailey*, 2013 IL 113690, ¶ 57 (quoting *Smith*, 233 Ill. 2d at 23). When a trial court violates that rule, " 'the appropriate remedy is to interpret the general verdict as a finding on felony murder' and to impose sentence accordingly." *Bailey*, 2013 IL 113690, ¶ 61 (quoting *Smith*, 233 Ill. 2d at 28).

¶ 41    Relying exclusively on *Smith*, defendant argued that his section 2-1401 petition was exempt from the ordinary two-year filing deadline because his challenge constituted an attack on a void judgment. The State moved to dismiss defendant's petition, asserting two grounds: (1) the judgment was not void and therefore defendant's petition was untimely, and (2) *Smith* did not apply retroactively to defendant's 1996 conviction. The trial court granted the State's motion to dismiss, finding that defendant had failed to advance a claim or defense that would entitle him to relief because *Smith* announced a new rule of criminal procedure and that decision did not apply retroactively to defendant's case.

¶ 42    The appellate court reversed, rejecting the State's challenge to the timeliness of the petition, holding that "[w]hen a defendant challenges a void judgment, the two-year time limitation does not apply." 2014 IL App (1st) 130037-U, ¶ 15. The appellate court explained, "[i]t is well established that a sentence entered without statutory authorization is void and may be attacked at any time, even on collateral review." 2014 IL App (1st) 130037-U, ¶ 16. On the merits, the appellate court held that *Smith* announced a "new" and "substantive" rule that thus had retroactive application to defendant's case. 2014 IL App (1st) 130037-U, ¶¶ 24-25. We granted the State's petition for leave to appeal from that decision.

¶ 43    After oral argument, this court issued an order *sua sponte* directing the parties to file supplemental briefs addressing two issues: whether our recent decision in *Castleberry* " 'should apply retroactively [to] matters on collateral review' " and, if so, " 'what impact would that have on the instant case.' " As the majority itself now concedes, the issues we

directed the parties to brief were "misleading." *Supra* ¶ 25. Indeed, I believe our *sua sponte* order for supplemental briefing unwisely raised entirely new issues with arguable relevance to this appeal.

¶ 44    In my opinion, *Castleberry* has limited, if any, application to this case and is certainly not dispositive. Our holding in *Castleberry*, the abolition of the void sentence rule, has practically nothing to do with this appeal. The void sentence rule originated in *People v. Arna*, 168 Ill. 2d 107 (1995), a decision that preceded the filing of defendant's *pro se* petition by approximately 17 years. If defendant sought to rely on *Arna*'s "void sentence rule," he certainly would have raised such a claim in his petition. He did not. That is, of course, perfectly understandable. The now-abolished void sentence rule held that a "sentence which does not conform to a statutory requirement is void." *Arna*, 168 Ill. 2d at 113. Because the void sentence rule depends on the construction of a sentencing statute, it presents a completely different challenge than that presented under the distinct rule articulated in *Smith* and reaffirmed in *Bailey*. The rule from *Smith* hinges on the omission of separate verdict forms in cases involving multiple murder charges. Although defendant's *pro se* section 2-1401 petition is inartfully written, a close reading shows that defendant sought "relief from judgment on voidness grounds *** that the judgment or order is void," and, relying on *Smith*, claims that "[b]ecause the Court rejected [his] request for separate verdict forms, it lacked the power and authority to render judgment in this case." *Castleberry* only addressed one type of void judgment challenge—a sentence that violates a statute. Defendant has never claimed that his sentence was void because it did not conform to a statutory requirement; rather, he claimed a void judgment challenge based on the rule from *Smith*.

¶ 45    Despite the distinction between these two types of challenges, the majority determines that our abrogation of the void sentence rule in *Castleberry* not only applies to a defendant's petition that never relied on the void sentence rule but also requires its dismissal. The majority even goes so far as to state that "defendant cannot rely on the void sentence rule, which *Castleberry* eliminated, to escape the two-year statutory time bar." *Supra* ¶ 35. This statement is unfair to defendant.

¶ 46    As I have already noted, defendant has never relied on *Arna*'s void sentence rule. Instead, defendant alleged that his natural life sentence constituted a void judgment under the rule from *Smith*. The majority seems to imply, with no explanation, that *Castleberry*, a decision limited to overruling the *Arna* void sentence rule, now controls all allegations of void judgments in section 2-1401 petitions. The problem with the majority's approach is that *Arna*'s void sentence rule is not the only type of voidness challenge historically recognized by this court. See *People v. Thompson*, 2015 IL 118151, ¶¶ 31-33 (explaining the types of voidness challenges recognized by this court in section 2-1401 proceedings).

¶ 47    More troubling, the majority's approach has the potential to cause confusion on the application and proper scope of our decision in *Castleberry*. As the majority explains, "the rule we adopted in *Castleberry* can make no difference in the outcome of a criminal trial" and "[n]either the void sentence rule nor its elimination impacts the accuracy of a defendant's conviction, the accuracy or constitutionality of a sentence, or the fundamental fairness of a defendant's trial." *Supra* ¶ 22. The same statements cannot be made about the rule from *Smith*. That rule requires, in the appropriate circumstances, the interpretation of a general verdict as a finding of felony murder and commensurate sentencing. *Bailey*, 2013 IL 113690, ¶ 61 (citing

*Smith*, 233 Ill. 2d at 28). Thus, in stark contrast to the void sentence rule and *Castleberry*, the *Smith* rule potentially impacts the outcome of a criminal trial.

¶ 48    Unlike the majority, I would not graft *Castleberry* and the void sentence rule onto this appeal. Instead, I would address the original threshold issue raised in the State's petition for leave to appeal—whether an alleged violation of the *Smith* rule on special verdict forms results in a "void judgment" for purposes of excusing the untimeliness of a defendant's section 2-1401 petition. This was the first issue considered by the appellate court (2014 IL App (1st) 130037-U, ¶ 15) and was extensively argued by the parties in their initial briefs to this court. This approach has the added benefit of not injecting potential confusion on the future applicability of *Castleberry* or the *Smith* rule on special verdict forms in murder cases.

¶ 49    As the majority correctly observes, this court has already explained what constitutes a void judgment for purposes of avoiding the two-year bar applicable to a section 2-1401 petition. In *Thompson*, this court acknowledged that our case law previously demonstrated three types of voidness challenges. *Thompson*, 2015 IL 118151, ¶¶ 31-33.

¶ 50    The first type of challenge is jurisdictional. A petitioner raises a jurisdictional voidness challenge by alleging that the underlying judgment is void because the court that entered the judgment lacked personal or subject-matter jurisdiction. *Thompson*, 2015 IL 118151, ¶ 31. A section 2-1401 petition alleging voidness based on lack of jurisdiction is not subject to the two-year limitations period and may be raised at any time. *Thompson*, 2015 IL 118151, ¶ 31.

¶ 51    The second type of section 2-1401 voidness challenge is constitutional. In a constitutional voidness challenge, the petitioner claims a final judgment is void based on a facially unconstitutional statute that is void *ab initio* and, therefore, unenforceable. *Thompson*, 2015 IL 118151, ¶ 32. A facially unconstitutional voidness challenge may be raised at any time. *Thompson*, 2015 IL 118151, ¶ 32.

¶ 52    The third type of voidness challenge formerly available under section 2-1401 involved a challenge to a sentence that does not conform to the applicable sentencing statute. *Thompson*, 2015 IL 118151, ¶ 33. *Thompson* acknowledged that this type of voidness challenge was based on the "void sentence rule" established in *Arna* and recognized that this court recently overruled *Arna* and abolished the void sentence rule in *Castleberry*. Consequently, *Thompson* stated that voidness challenges based on the former "void sentence rule" are no longer valid. *Thompson*, 2015 IL 118151, ¶ 33.

¶ 53    *Thompson*'s explanation of the limited types of void judgment challenges is entirely consistent with this court's recognition that void judgments occupy a "unique place" in the legal arena. *Castleberry*, 2015 IL 116916, ¶ 15. Because of the drastic consequences of labeling a judgment as void, we have explained that " 'only the most fundamental defects' " justify a determination that a judgment is void. *Castleberry*, 2015 IL 116916, ¶ 15 (quoting *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 38).

¶ 54    In *Bailey* and *Smith*, this court did not hold that a violation of the rule from those decisions resulted in a void judgment or sentence.[1] Nor did we find that the trial court lacked jurisdiction

---

[1] This point further illustrates the majority's error in equating a challenge under *Arna*'s void sentence rule to a challenge under the *Smith* rule. Unlike the *Smith* rule, a violation of the now-abolished void sentence rule resulted in a void judgment or sentence that could be challenged at

or that any statute was facially unconstitutional. See *Thompson*, 2015 IL 118151, ¶¶ 31-33 (recognizing those two types of void judgment challenges as appropriate voidness challenges in section 2-1401 challenges after *Castleberry*.) In fact, no discussion or analysis on the issue of voidness appears in either *Bailey* or *Smith*. Instead, this court held only that it was an abuse of discretion not to issue special verdict forms in specific circumstances in murder cases. *Bailey*, 2013 IL 113690, ¶ 57 (citing *Smith*, 233 Ill. 2d at 23). Under those decisions, the error is remedied by " 'interpret[ing] the general verdict as a finding on felony murder' and to impose sentence accordingly." *Bailey*, 2013 IL 113690, ¶ 61 (quoting *Smith*, 233 Ill. 2d at 28).

¶ 55    Because a violation of the *Smith* rule constitutes an abuse of discretion and is remedied by sentencing on felony murder, it cannot be said that a violation of that rule results in a void judgment. In other words, a violation of the rule from *Smith* cannot render a judgment void for purposes of section 2-1401. See *Thompson*, 2015 IL 118151, ¶¶ 31-33 (detailing the types of voidness challenges, none predicated on a finding of an abuse of discretion). Accordingly, defendant cannot avoid the two-year filing limitation in section 2-1401, and his untimely petition is barred. On this basis, I agree with the majority that the appellate court's judgment should be reversed and the circuit court's judgment dismissing defendant's petition should be affirmed.

¶ 56    For these reasons, I specially concur.

---

any time. See *Castleberry*, 2015 IL 116916, ¶ 13 (describing "void sentence rule" (citing *Arna*, 168 Ill. 2d at 113)).